May it please the Court, my name is Mason Bolling, I'm one of the attorneys representing Jane Doe, the appellant in the matter before you today. I will try to reserve three minutes of my time for rebuttal. This case is about the scope of judicial review under Title IX and the minimum steps a school district must take to evade liability for gender-based peer harassment as a matter of law. The district court found that the school district did something and that that bare minimum response should not be second-guessed. As the appellee puts it in their brief, quoting the Fifth Circuit, I believe, judges make core vice principles. Doe is mindful of the Supreme Court's cautions in Davis that disciplinary decisions should ordinarily not be second-guessed and that a victim of peer harassment has no right to demand a disciplinary action. There was no disciplinary action taken and there really was no remedy of any kind provided until far, far after the fact. And Davis also made clear that even where a district does something, that something may not be enough if its actions were clearly unreasonable under the known circumstances. In this case, Doe was 15 years old, a sophomore at Dardanelle High in October 2014 when her assailant R.C. touched her breast and called her a gendered slur. Doe reported that inappropriate touching to administrators and stated that it had happened several times. R.C., in fact, her assailant, did not deny it at the time. That's according to the contemporaneous notes of the vice principal. The district did not notify Doe's parents at that time. They did not notify R.C.'s parents. They did not notify their teachers, even the teachers who had them in class at the same time in the same classroom. They did not notify the Title IX coordinator or anyone else for that matter. The only action taken was a stern talking to with R.C. The students were not even separated within their classrooms. Unknown to anyone except the district administrators at that time, at least those involved in this case, another student, T.R., had previously reported R.C. for inappropriate or unwanted touching. As far as the record reflects, no action was taken in response to that. At least the record is silent as to what action, if any, was taken at that time. The second assault on Doe took place almost one year after the first incident in this case, or what we've termed the first incident in this case, in October 2015 in their shared classroom, seated directly next to each other. So was it fair to assume then that the stern talking to was effective for a year? Admittedly, Your Honor, there's a gap in exactly what happened throughout that year. Doe reported at the time of her first incident that it had happened several times up to that point. And after the second incident, her therapy notes, for instance, indicate that he continued to harass her at school after that fact. So drawing the inferences in her favor, and given that they were still in close proximity to each other, it's fair to assume on the record that Doe wasn't taken care of for an entire year as a result of that discussion. In the second case, they were seated directly next to each other in the same classroom, and R.C. once again touched her breast. And this time, emboldened, he took it a step further. He forced his hand up her shorts and touched her vagina, and he attempted to force her hand onto his penis as well. She reported that incident to administrators. And again, the response was a stern talking to with R.C., this time with a school resource officer present. The reporting, again, did not go further than that. Parents were not notified. The teacher in whose classroom this assault took place was told by email that there may have been some inappropriate touching and that she should try to keep an eye on things and keep the lights on during movies in the future. But that was the entire extent of the reporting. In fact, the two students' special ed teacher, Ms. Duffell, was not notified at all that something like this had happened or that she should be watching for something like this in her own classroom. So what's your legal argument? We know the facts. Sure. We've spent five minutes on the facts, but we read all that beforehand, so you might want to what you think is the legal issue here. Right. The first being that there was no response to the first incident other than a stern talking to, and that as a result of that, R.C. acted again in the same manner and then some against Doe, and that the school was indifferent in taking no action whatsoever. And in fact, in the deposition testing... Deliberate indifference. Is that the argument? Right. To the extent that that was the only action taken by the school, it was unreasonable under the circumstances. Okay. What's your best authority for the idea that schools must do more than that to show that they're not deliberately indifferent? There are several cases, Your Honor. We actually think that this case is quite similar to the facts as described in Davis v. Monroe, the 1999 case from the Supreme Court. There, for example, the incidents began with an attempt to grope and with sexualized statements. No discipline was taken. There were multiple victims just like there were here. The student became depressed and suicidal. And what's really critical in response to your question, Your Honor, is that when it was reported to the principal in that case, his response was, I guess I'll have to threaten him, the assailant, a bit harder. And that's essentially what the school did in this case. They just gave him another stern talking to each time one of these incidents came up. And other circuits under similar facts have held the same. For example, the 11th Circuit in Doe v. the School Board of Broward County in 2010 reversed a grant of summary judgment because they said they, quote, the district court's conclusion that merely because school officials confronted the assailant, obtained statements from complaining students, and informed the school board's special investigative unit of sexual misconduct, which is something that didn't happen here. Even the Title IX coordinator wasn't notified. That wasn't enough to mean that the school board's response was reasonable. In fact, in that case, they said, we reached this conclusion even though it is undisputed that the principal and the school board took some action in response to the allegations. Now, is there some tension between a deliberate indifference standard and a reasonableness standard? Are they really the same thing? Reasonable sounds like negligence, and deliberate indifference cases always say there has to be more than just negligence. Certainly there does have to be more. Okay, why do you refer to the standard as reasonableness? The standard is, in fact, whether a district or its employees acted in a way that was clearly unreasonable. So it's sort of the inverse. It's a harder burden to meet, but it's still asking whether their actions were reasonable, and then if they were clearly unreasonable, they were deliberately indifferent. So it's true. It's not just negligence. There must be something more than negligence. And all of these cases that I'm referring to have analyzed this under the deliberate indifference and clearly unreasonable standard. In fact, there's one more case I wanted to point to in response to your question. That's the Sixth Circuit case, Vance v. Spencer County. Does that clearly unreasonable language come out of Davis, or is that some court of appeals? Yes, Your Honor. It's in Davis? Yes. In Vance, the court of appeals said, the only evidence before this court reflecting the defendant's responses to the incidents involves talking to students. And the same is true here. And really, the district court's opinion, as well as the school district's opinion, rests on kind of three pillars. One being that these were isolated incidents, and the record belies that. Doe herself had at least two incidents that were reported. At the time of the first incident, she reported that that had happened several times. In her therapy notes, she explained that she continued to be harassed by RC at school. And there's documented record evidence in the contemporaneous notes of the vice principal that at least one other student also reported the same kind of unwanted touching. Secondly, the district court and the school district allege that Doe did not suffer. But in fact, her therapy notes indicate that she was scared at school. She was anxious. Is suffering really the question, or is it being denied equal access to an educational program? It's the latter. There must be a deprivation of some kind of educational benefit. So what's the evidence of that? The evidence is from her own testimony and the testimony in those notes that while at school, she was depressed. She was withdrawn. In fact, the special education teacher in this case testified that she had observed her being withdrawn from her classmates. So she didn't have the same kind of experience that she had before that. In fact, she was even self-harming and cutting as a result. And so it's a reasonable inference at summary judgment to assume that that had some kind of impact on her day-to-day activities in school and her educational opportunities. Any case law to support that theory? Sure, Your Honor. Again, Davis, for example, noted that one of the potential harms here was that the student had become suicidal and in fact left a suicide note for her father. How was that caused by what the district did, though, in this case? Doe explained to her therapist that she felt that she was being blamed for the situation at school, essentially that the administrators thought that she was making all of this up. And she said, that she was being emotionally abused by the principal. And so all of this baggage was not just a result of the actual abuse from RC, but also the response, the ongoing response from the school district. Finally, I would just point out to finish my thought, the third point that the district court and the district relied on, and what I've already largely addressed, was that the school acted reasonably in its response, or at least not clearly unreasonably. We submit, based on the cases that I cited earlier, that a mere talking to the students under these circumstances isn't enough. We're not asking that the school should have done a particular thing, but there are a number of things that they could have done. Even if they were fruitless, they would not have been deliberately indifferent. Contacting the parents being an obvious one, separating the students being another. And I see that I'm running into my rebuttal time, so if there are no further questions, I'll reserve the rest of that time. Thank you. Are you focused on both actions, or just the first one? Both. The allegation is that the first incident and the lack of a response there gave rise to the second incident, because the students, for example, were allowed to be in a classroom next to each other in a darkened room, and that RC knew he could get away with it. And in fact, he did. He didn't even deny the first. What about the second time, then? The second time, the result of the second incident was the documented depression and the anxiety at school, and her feeling threatened, essentially, by administrators. I see. Okay, thank you. Thank you, Your Honors. Mr. Keyes, we'll hear from you. Good morning, Your Honors. May it please the Court. My name is Cody Keyes. I represent the Dardanelle School District, home of the Sand Lizards. The superintendent asked that I wear sand lizard tie, but I thought it would be a little flashy for this morning. Might not set the right tone for this kind of case, either. Probably not. The serious matter. I said I would not do that and stick with the blue. Your Honor, I understand that you said that you knew the facts. Well, I wanted to clear up a couple of points. The first incident, ninth grade, 2014, a counsel stated that Doe's breasts were touched, and that's clearly not in the record. We deposed Doe. We asked her very nicely to explain these incidents, and the record is clear that they were playing a game of kickball, and Doe was on second base. And as R.C., the middle student, was running the bases, in an attempt to knock her off base, he put his forearm into her chest. That was the contact. So if it was incidental... What did he say while he was doing that? Sir? What did he say while he was doing that? He, indeed, after that, called her the sexual epitaph B-I-T-C-H. We don't dispute that that is her testimony. I just want to make clear that this was not a case of him groping her in the middle of this P.E. class. He did afterwards, he did call her a B-I-T-C-H, which is the basis for appellant claiming that it had some sexual reference. But, Your Honor, the cases are clear in Davis, as we cite to, that gender in this type of environment with students, banter, teasing, horseplay, even when it has a gender effect, or even when it's gender-related, is not enough to rise to the standard of a Title IX case of deliberate indifference because of sexual harassment. Well, hadn't, didn't another girl report something about him trying to touch her inappropriately at the time of this first incident? That is a note that was documented by the vice principal that a female T.C., and in the testimony, which that's Vice Principal Balloon, he testified that when he followed up R.C. about this, that it was him touching the girl on her arm, hitting her on the arm, attempting to get her attention. So it wasn't sexual. That's what he said. What did she say? I don't know if the record has any statement from T.C. as to this. It was an undated reference, it was an undated discipline note, and it simply said inappropriate touching, and it was Balloon's testimony when he investigated the matter, it related to R.C. hitting her on the arm, and he told him, obviously, you don't need to be hitting young ladies. Well, as I remember the deposition, didn't he, in fact, say that he didn't really recall the incident, he just recalled the follow-up, right? That it's undated, he doesn't know when it happened, he's sorry it's undated, he can only presume that it happened before, that he doesn't recall what the exact allegation was, but when he followed up with R.C., R.C. said, I was hitting her repeatedly on the shoulder, right? Is that what the record is? That's correct. That's in the record. When we get to the second incident, there's obviously a dispute as to what was reported by whom and when, and part of the standard that we are to apply is clearly unreasonable under the circumstances. The known circumstances at this point have to be resolved in favor of the allegations of the non-moving party, right? Correct, Your Honor. And so the question is, isn't there at least some question of fact in this case that needs to be decided by a finder of fact? Well, absolutely not, Your Honor. Why not? Because as we know the first incident, the P.E. incident, which she unequivocally said was the only incident. So the court, Judge Holmes stated in his opinion, that did not give notice to the district that something else would happen. And the cases constantly speak of that, the notice standard. So we have to have notice of a similar incident. So that incident in ninth grade did not put us on notice that R.C. could potentially or allegedly commit a sexual assault, a force himself upon somebody. But even when that happens, Your Honor, although there's a dispute over those facts, which the court correctly gave all inferences to Doe, even then the two were separated. The teacher was told to keep the lights on in the future to make sure you can see your classroom. Ms. Lawrence, the principal, asked Doe if she would like counseling. She said no. But Ms. Lawrence still set up a counseling between her and Ms. Counselor Burrus. The two had no more contact that year. So she made those changes to protect Doe. In fact, the classroom teacher was going to have everyone change as to not ostracize Doe, but she had already changed seats that time. So it's not only about what did we do to R.C. And remember, R.C. is constantly denying this. When the principal and the SRO went up to him and said, hey, buddy, what's going on? He vehemently denied it. Not a surprise, right? Right, not a surprise. The fact is, what did we do to protect Doe? And obviously we did because it didn't happen again. There were no more incidents. When we were put on notice of that incident, although the facts, we didn't know everything, giving all inferences to Doe, it did not happen again. And as Judge Grunder was asking about educational benefit, that's a big argument that I made in the court below. Judge Holmes briefly touched on it. It's not a negligence standard. It's an educational benefit. Here, Doe, her grades improved. She graduated from the Army ROTC program. She participated in the VOTEC program, which in that part of Arkansas was a very big deal. She graduated with her fellow students. She was, her educational committee met at the end of each year and showed that she was making progress in her goals. Her mother even commented that she was happy with the progress Doe was making. And so she made progress. And I asked her in her deposition, you know, did you like school? And she talked about the things that she liked. And those are all, that's her testimony. And that's the facts that she was not deprived of any educational benefits. She actually succeeded because we ensured that she was not in that position with RC again when we were given notice that he had forced himself upon her. His hand, that is. Is that clear to that point, Your Honor? Yes. Okay. Again, I also want to make sure, because this inquiry with Title IX, it's a fact-intensive inquiry, and this Court has taken this up just last year with Judge Colleton sitting on the panel in the estate of Barnwell v. Watson when that student in the Little Rock School District had been bullied over the course of several years. And some of them were gender-related statements, calling him fruity, gay, talking about his effeminate accent. And he ultimately committed suicide, tragically. And this Court determined that there was not deliberate indifference based on what the district knew. So the facts were important there. Here, this attempting to intertwine that there were multiple incidents per ninth-grade year, that's not the case. As I tried to make clear in my briefing, the district thought that there was a hallway incident. But Doe vehemently denied that. She said the only incident my ninth-grade year was the incident in the PE class. Where did this line come from in the referral then that said evidently he had tried to touch her several times previously? Right. Principal Lawrence, who she went to first, it was her recollection that the report from Doe was that R.C. was making contact with her in the hallway during classes and making contact with her breast. That was what Lawrence recalled. She reported that to Balloon, who then spoke with R.C. And it was their impression that this had happened more than once. That's when they took the remedial measures of talking to him and telling him, do not do this again. And nothing happened that year. When I talked to Doe in her deposition, she said there is no hallway incident. She said that the only incident was in kickball. And that's coming from Doe's deposition, page 66. She denied there being any hallway incident. So, you know, giving all inferences to Doe, that was the only interaction that year that she had with R.C. And we know the steps that the district took. And it didn't happen again. Your Honor, in the case of Barnwell, decided by this court a year ago, the standard is what the district did, was it clearly unreasonable? And the question I would ask is, what does that mean that a district has to do beyond what we did here? These students are in ninth grade. We have incidents that are a year apart. You know, it begs the question at that age, what are we supposed to do with R.C. who is vehemently denying these incidents? We separated them. Nothing happened for over a year. How can that be determined to be clearly unreasonable since we were able to stifle the alleged acts? And indeed, after the second incident was reported, nothing else happened. There were no further interactions between the two. And Doe ultimately graduated from school. If I could briefly talk about two cases that appellant relies on, Doe v. Broward County. Doe v. Broward County actually involves an adult on student. And that involved two prior students giving the district notice that this teacher had made overtly sexual conduct, including verbal and physical, while in his classroom. And so that is adult on student. And the Davis case talked about, you have to look at the relationships. And we're going to place higher scrutiny on those relationships. So it's clearly distinguishable. And then the Vance case, Vance v. Spencer of the Sixth Circuit, that involved many assaults. The student there, Alma, it was very sad to read the record. She had been harassed, including stabbed in the hand. Two male students yanked up her shirt, pulled her hair, attempted to disrobe her. And that happened over the course of several years, ultimately leading to her having to quit school. Again, that was severe and pervasive. Because the Davis court tells us that it must be severe and pervasive in order for it to meet the rigorous standard of Title IX, student on student sexual discrimination. Here, we just simply do not have that. And every time that an incident was brought to the attention on the two occasions, the district responded, not just in its discipline of RC, but in protecting Doe and making sure she had those counseling opportunities available to her. And it indeed protected her, as we know there was nothing after the second incident, which it was arguably more in the context of sexual assault, the first one being the two making contact during a game, the second one being him attempting to force himself on her. If the panel has no additional questions. I just have a procedural question.  This appendix in the case, but the briefs throughout cite these depositions and exhibits, which are not in the appendix. Did you guys consider possibly furnishing the court with an appendix that has all the materials that you're citing? You might consider that in the future, because even if they're under seal, you can file a sealed appendix. But if you don't, then we don't have easy access to the materials. We can get them through the record, but just a thought for a future reference. Yes, Your Honor. Yeah. Thank you for your argument. Thank you. Mr. Bowling, we'll hear from you in rebuttal. I guess it was your appendix. Maybe I should have directed that to you. But you can file an appendix that has sealed materials. I don't know if you knew that, but that would make it easier. Then we'd have three copies. Each judge would have all the material that you think is important. Yes. You don't need to do it at this point. But I'm just telling you for future reference, that's available. I understand. I apologize for that, Your Honor. We coordinated with the clerk's office about that, and they instructed that we should have them delivered here under seal. There was an ECF notification that they were delivered, but admittedly, we did not include those in the appendix itself. But they are in this office somewhere. I understand we can get access to them. If you just send the record materials, there's one copy of the record. If you send an appendix, you send three copies. And you have three judges on the panel. Understood, Your Honor. I apologize. Go ahead with your rebuttal. Thank you for that. As I said, just a few points on rebuttal. I think my co-counsel's presentation shows the issue with the decision in this case. The standard is a summary judgment standard, and a lot of that presentation was filling in the gaps, explaining away conflicts in testimony. The contemporaneous notes from the time of the incident, the time of the reports, are the best evidence of what actually happened. So if years after the fact, in a deposition, something else is different, that's an issue for the jury to resolve. So your theory would be that the contemporaneous notes, which are in a deposition, would still create a question of fact that needs to be resolved by the finding of a fact? Right. I don't submit that a plaintiff, for example, can create their own issues of fact just by giving alternating testimony within a deposition, for example. But the notes from the vice principal speak for themselves. And so if there was something different in depositions later, I think that is the decision. Where did he get the information about several times? You're talking about those notes that say she claimed it? The notes themselves do not state. No source was stated. Correct, Your Honor. But then the victim, the plaintiff, says there was no hallway incident. Do you agree with that? I agree that that was in her deposition testimony. But that was just one of potentially many such incidents. At summary judgment, if there's a contemporaneous note that says something has happened several times, it's just as reasonable to assume that that information came from the victim in the one-on-one interview as opposed to the principal, which is . . . Do you know if the victim denies that? The victim denied questioning regarding a particular incident in the hallway, not all incidents collectively. Were there questions asked about were there other incidents? I mean, it's been a while since I looked at it. But my recollection was that there was a question asked and she said the two incidents is all she talked about. She never filled in any blanks, did she? None other were described with specificity, Your Honor. That's true. Yes. Just seems like if the person who has firsthand knowledge is saying there weren't any other incidents, then why should we take an unattributed statement that there were several as creating an issue of fact? For one thing, the assailant did not deny that. In the same contemporaneous note, it says it apparently has happened several times, R.C. does not deny it. And a reasonable interpretation of that is that he didn't deny that it happened several times. Moreover, I see I've run out of time. Go ahead. Finish your thought. I do want to briefly address this idea that there were no other incidents in the 2016 year following the October 2016 incident. I think that the appellee is suggesting that based on the fact that they would say that the therapy records are not admissible. And so I briefly want to point out that under Rule 56, they're admissible if they can be put in a form at trial that would be admissible. This court, for example, in JRT said that all a non-moving party at summary judgment has to do is show that they may be able to produce the evidence. All right. So I don't know. What's the point here? Did you put in some therapy records that said there were other incidents between the two? Yes. The therapy records indicate that after the October 2016 incident, R.C. continued to verbally harass Doe at will at school. Did she report that? It was not reported to school administrators based on the notes, at least, that are in the record. She didn't say that she reported it in her testimony or in an affidavit? Correct, Your Honor. She did not mention those specifically in her deposition. You had the opportunity to have her say that or to put an affidavit in. I'm just wondering if you put on any evidence that she reported it. You're saying no, but she did tell her therapist that it happened. Is that the gist of it? That's correct, Your Honor. Yes. And if there are no further questions, then we ask that this court reverse and remand. Thank you, Your Honors. All right.